UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Civil No. 15-2617(DSD/KMM)

St. Paul Mercury Insurance Company,

       Plaintiff,

v.                                          **ORDER**

Order of St. Benedict, Inc.,

       Defendant.

     Frederick P. Marczyk, Esq. and Drinker Biddle & Reath, LLP, One Logan Square, Suite 2000, Philadelphia, PA 19103 and Lance D. Meyer, Esq. and O'Meara Leer Wagner & Kohl, PA, 7401 Metro Blvd. Suite 600, Minneapolis, MN 55439, counsel for plaintiff.

     Mollie Nolan Werwas, Esq. and Kopon Airdo, LLC, 233 South Wacker Drive, #4450, Chicago, IL 60606 and Robert T. Stich, Esq. and Stacey L. Sever, Esq, and Stich Angell Kreidler Dodge & Unke, P.A., 250 2nd Avenue South, Suite 120, Minneapolis, MN 55401, counsel for defendant.

     This matter is before the court upon the motion to dismiss or join necessary parties by defendant The Order of St. Benedict, Inc. (Order) and the motion for summary judgment by plaintiff St. Paul Mercury Insurance Company (St. Paul). Based on a review of the file, record, and proceedings herein, and for the following reasons, the court denies the Order's motion and grants St. Paul's motion.

**BACKGROUND**

This insurance coverage dispute arises out of an underlying claim by Doe 27 that Father Francis Hoefgen, a member of the Order, sexually abused him between 1989 and 1992. Doe 27 filed suit in Dakota County, alleging that the Order is liable for Hoefgen's conduct under theories of nuisance, negligence, negligent supervision, and negligent retention.[1] Thereafter, another claimant, Doe 188, filed a similar lawsuit against Father Timothy Backous and the Order.[2] The Doe 27 lawsuit is stayed pending bankruptcy proceedings involving the Archdiocese. The status of the Doe 188 lawsuit is unclear.

St. Paul insured the Order under Policy No. CK06304393 from July 1, 1990, to July 1, 1991, and under Policy No. CK06305315 from July 1, 1991, to July 1, 1992. The policies provide commercial general liability (CGL) coverage and umbrella liability coverage. The CGL policies cover "any amounts any protected person is legally required to pay as damages for covered bodily injury ... that: happens while this agreement is in effect; and is caused by an event." Conklin Decl. Ex. B, at 3; id. Ex. C, at 3. The CGL policies exclude coverage for "bodily injury ... that's expected or

---

[1] Doe 27 also sued the Archdiocese of St. Paul and Minneapolis, Hoefgen, and St. Luke's Institute. St. Luke's has since been dismissed from the suit. ECF No. 61-1.

[2] The Doe 188 suit was filed after this suit commenced. The court will nevertheless consider that suit in the context of the instant motions. ECF No. 61-2.

2

intended by any protected person." Id. Ex. B, at 8; id. Ex. C, at 8. The parties added the "Members of the Order of St. Benedict" as protected persons through an endorsement. Id. Ex. B, at 16; id. Ex. C, at 16. A separate endorsement provides that "Church Members" are protected persons "[b]ut only for covered injury or damage that results from your activities or activities they perform for [the Order]." Leuthner Decl. Exs. A and B. The same endorsement further states that the Order's "officers, trustees, clergy or members of the board of governors are protected persons ... [b]ut only for covered injury or damage that happens or is committed while they're acting within the scope of their duties." Id.

The umbrella policies are similarly worded except they do not include the endorsements noted above. They were intended to cover amounts in excess of the CGL policies' limits and certain claims not covered by the CGL policies. Conklin Decl. Ex. B, at 21; id. Ex. C, at 22. An endorsement to the 1990-1991 umbrella policy excludes coverage for "any claim resulting from the sexual or physical abuse or molestation of any person by you, your employees or volunteer workers." Id. Ex. B, at 34. An endorsement to the 1991-1992 umbrella policy similarly excludes coverage for "any claim resulting from physical, mental, moral harassment or assault of a sexual nature against any person, by [the Order], your employees, or volunteers." Id. Ex. C, at 35.

3

On June 2, 2015, St. Paul filed this action asking the court to declare that it has no obligation to defend or indemnify the Order for the conduct alleged in the underlying lawsuits. The Order promptly filed a motion to dismiss for failure to include necessary parties or in the alternative to join all necessary parties. St. Paul, in turn, moved for summary judgment. The motion hearing was rescheduled several times at the request of the parties due to the underlying bankruptcy and criminal proceedings. On January 27, 2017, the court proceeded with the hearing following supplemental briefing by the parties.[3]

**DISCUSSION**

**I.  Motion for Joinder**

The Order argues that the claimants and its co-defendants in the underlying lawsuits are required parties pursuant to Federal Rule of Civil Procedure 19(a)(1). Joinder of any person subject to service of process whose presence will not destroy a court's subject matter jurisdiction is required if:

> (A) in that person's absence, the court cannot accord complete relief among existing parties; or
>
> (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's

---

[3] The Order's motion to dismiss - premised on the argument that St. Luke's was a required party that would divest the court of diversity jurisdiction - is now moot given St. Luke's dismissal from Doe 27's underlying suit.

4

>    absence may:
>
>>    (i) as a practical matter impair or impede the person's ability to protect the interest; or
>
>>    (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a)(1).[4]  The court finds that the underlying claimants and co-defendants are not required parties.

As an initial matter, Rule 19(a)(1)(B) requires that the absent party not only have an interest related to the subject of the action, but must also affirmatively "claim[] an interest." The absent parties have failed to do so here and thus do not qualify as required parties.[5]  <u>Am. Ins. Co. v. St. Jude Med., Inc.</u>, 597 F. Supp. 2d 973, 978 (D. Minn. 2009).  Even if they had claimed such an interest, however, the Order's motion would still fail.

First, the Order argues that the absent parties have an interest in the case because the policy proceeds would serve as a "potential funding source to satisfy any underlying judgment." ECF

---

[4]  The court will not address Rule 19(a)(1)(A) or (B)(ii), because defendant does not argue that complete relief cannot be accorded without the underlying claimants or that proceeding without them could result in double, multiple, or otherwise inconsistent obligations.

[5]  Even if the absent parties were not required to formally claim an interest in this matter, the court would be disinclined to force them - particularly the Doe plaintiffs who wish to remain anonymous - to participate in additional litigation involving such sensitive matters.

No. 60, at 6. Not only is that interest purely speculative given that neither of the underlying cases has proceeded to judgment, an "economic interest in the outcome of the litigation is not itself sufficient to warrant mandatory [joinder]." Med. Liab. Mut. Ins. Co. v. Alan Curtis LLC, 485 F.3d 1006, 1008 (8th Cir. 2007).

Second, the court is not persuaded that the absent parties' interests will be jeopardized if they are not joined. The Order fails to establish that its interests and those of the absent parties diverge or that it will fail to adequately protect those interests. Indeed, the Order's interests and those of the absent parties are fully aligned given that they would all benefit from a determination that the policies cover the underlying conduct. The Order seeks insurance coverage in order to avoid having to satisfy a potential judgment in the underlying cases. And the absent parties would undoubtedly prefer to have insurance proceeds readily available should the Order be found liable. Under these circumstances, there is no indication that the Order cannot or will not zealously advocate for coverage. It has in fact done so in its opposition to St. Paul's motion for summary judgment. Accordingly, the absent parties' interests will not be impaired or impeded if they are not joined in this case. The joinder motion is denied.

## II. Motion for Summary Judgment

### A. Standard of Review

"The court shall grant summary judgment if the movant shows

that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A fact is material only when its resolution affects the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. See id. at 252.

On a motion for summary judgment, the court views all evidence and inferences in a light most favorable to the nonmoving party. Id. at 255. The nonmoving party, however, may not rest upon mere denials or allegations in the pleadings but must set forth specific facts sufficient to raise a genuine issue for trial. Celotex, 477 U.S. at 324. A party asserting that a genuine dispute exists – or cannot exist – about a material fact must cite "particular parts of materials in the record." Fed. R. Civ. P. 56(c)(1)(A). If a plaintiff cannot support each essential element of a claim, the court must grant summary judgment because a complete failure of proof regarding an essential element necessarily renders all other facts immaterial. Celotex, 477 U.S. at 322-23.

**B.   Coverage**

In Minnesota the interpretation of an insurance policy is a question of law. Am. Family Ins. Co. v. Walser, 628 N.W.2d 605, 609 (Minn. 2001). The court interprets an insurance policy in

accordance with general principles of contract construction, giving effect to the intent of the parties. Thommes v. Milwaukee Ins. Co., 641 N.W.2d 877, 879 (Minn. 2002). The court gives unambiguous language its plain and ordinary meaning and construes ambiguous language against the drafter and in favor of the insured. Id. at 880; Nathe Bros., Inc. v. Am. Nat'l Fire Ins. Co., 615 N.W.2d 341, 344 (Minn. 2000). Language is ambiguous if it is "reasonably subject to more than one interpretation." Columbia Heights Motors, Inc. v. Allstate Ins. Co., 275 N.W.2d 32, 34 (Minn. 1979). However, the court "guard[s] against invitations to find ambiguity where none exists." Metro. Prop. & Cas. Ins. Co. v. Jablonske, 722 N.W.2d 319, 324 (Minn. Ct. App. 2006) (citation and internal quotation marks omitted).

The insured must first establish a prima facie case of coverage. SCSC Corp. v. Allied Mut. Ins. Co., 536 N.W.2d 305, 311 (Minn. 1995), overruled on other grounds by Bahr v. Boise Cascade Corp., 766 N.W.2d 910, 919 (Minn. 2009). If coverage is established, the burden shifts to the insurer to prove that a policy exclusion applies. Id. at 313. The court strictly construes exclusions against the insurer, in light of the insured's expectations. Thommes, 641 N.W.2d at 880. If the insurer demonstrates that an exclusion applies, the insured bears the burden of proving an exception to the exclusion. SCSC Corp., 536 N.W.2d at 314.

### 1. CGL Policies

The parties do not address whether the Order has established a prima facie case of coverage and instead move directly to whether a policy exclusion applies. The parties' central disagreement is whether the "intentional bodily injury" exclusion applies. The CGL policies expressly exclude coverage for "bodily injury ... that's expected or intended by any protected person." Conklin Decl. Ex. B, at 8; id. Ex. C, at 8. According to St. Paul, the intended-injury exclusion applies because Hoefgen and Backous were "protected persons" and their conduct resulted in expected or intended bodily injury to Does 27 and 188. The Order argues that Hoefgen and Backous cannot be considered "protected persons" because St. Paul has not established that they were acting within the scope of their duties at the time of the alleged abuse. According to the Order, if Hoefgen and Backous were not "protected persons" during the alleged abuse, the exclusion does not apply and their conduct is covered under the policies. Resolution of this issue turns on interpretation of the two "additional protected person" endorsements.

The first endorsement adds "Members of the Order of St. Benedict" as protected persons without limitation. See id. Ex. B, at 16; id. Ex. C, at 16. The second endorsement adds "Church Members, Officers and Volunteer Workers" as protected persons only insofar as they are performing within the scope of their duties.

9

Leuthner Decl. Exs. A and B. The Order argues that because the second endorsement uses the term "member" without expressly excluding "Members of the Order of St. Benedict," it must apply to those members, including Hoefgen and Backous. The court disagrees.

The only reasonable interpretation of the two endorsements is that they apply to different categories of people. The first endorsement applies to "Members of the Order of St. Benedict." The second endorsement applies to "Church Members, Officers and Volunteer Workers." Although one could broadly define "church members" to include members of the Order, doing so here would be unreasonable because it would effectively nullify the first endorsement. See Carlson Mktg. Grp., Inc. v. Royal Indem. Co., 517 F. Supp. 2d 1089, 1097 (D. Minn. 2007) ("Policy language is ambiguous if it can reasonably be interpreted more than one way.") (emphasis added). Had the parties wished to strike the first endorsement in favor of the second, they could have done so. Their decision to maintain both endorsements is telling and dispositive. As a result, Hoefgen and Backous are "protected persons" under the policies.

The court further notes that even if the Order were correct that Hoefgen and Backous are not "protected persons" for purposes of the intended-injury exclusion, there likely would be no coverage anyway. The policies apply to "each protected person named in the introduction ... and to each other protected person." See Conklin

Decl. Exs. B, at 6; id. Ex. C, at 6.  If Hoefgen and Backous are not "protected persons," and thus not insureds, then the policies simply do not apply to them.

The Order next argues that the exclusion does not apply because there are insufficient facts to establish that the priests acted with intent to cause bodily injury.  The Order acknowledges that intent to injure is inferred when a person sexually abuses a minor, but notes that such an inference may be rebutted by evidence that the abuse was "unintentional because of mental illness." B.M.B v. State Farm Fire & Cas. Co., 664 N.W.2d 817, 826 (Minn. 2003).  The Order has failed to submit any evidence to rebut the inference that Hoefgen or Backous acted with intent to injure.  The Order suggests that the lack of progress in the underlying cases has impeded its ability to uncover necessary facts relating to Hoefgen's and Backous's mental health.  But the Order likely already possesses all of the information needed to address the issue.  See Marczyk Decl. Exs. A-C (cataloguing information about priests maintained by the Order, including medical records). Further, if the Order needed to engage in third-party discovery to gather such information, it has had ample time and ability to do so.  For example, the Order could have subpoenaed witnesses and documents notwithstanding the stay in the Doe 27 case.  To the extent the Order suggests that summary judgment is premature, it should have requested relief under Rule 56(d).  See Nolan v.

11

Thompson, 521 F.3d 983, 986 (8th Cir. 2008) ("In the absence of a Rule 56[d] motion for a continuance accompanied by an affidavit showing what specific facts further discovery might uncover, a district court generally does not abuse its discretion in granting summary judgment on the basis of the record before it.").

The Order also contends that the intended-injury exclusion cannot be read to apply to the underlying conduct because, as evidenced in the umbrella policies, St. Paul could have, but chose not to, expressly exclude coverage for sexual abuse. See See Conklin Decl. Ex. B, at 34; id. Ex. C, at 35. The fact that the CGL policies' exclusion is more broadly worded than the umbrella policies' exclusion does not mean, however, that St. Paul intended to cover sexual abuse under the CGL policies. A plain reading of the CGL policies' exclusion reveals that it includes such conduct, even though it is not expressly enumerated.

Finally, the Order argues that the CGL policies' severability provision and intended-injury exclusion are at odds and, at a minimum, create a fact issue. The severability provision states that the policies apply to "each protected person named in the introduction as if that protected person was the only one named there; and separately to each other protected person." See id. Ex. B, at 6; id. Ex. C, at 6. The exclusion bars coverage for the intentional conduct of "any" insured. See id. Ex. B, at 8; id. Ex. C, at 8. The court is not persuaded that there is any ambiguity to

12

resolve or that the two provisions are in any way inconsistent. See Secura Supreme Ins. Co. v. M.S.M, 755 N.W.2d 320, 328 (Minn. Ct. App. 2008) ("[A]n exclusion prohibiting coverage for all insureds, including innocent insureds, based on the wrongful or intentional acts of 'any insured' is not ambiguous" even when the policy contains a severability clause).  As a result, the Order is not entitled to coverage under the CGL policies.

### 2. Umbrella Policies

The umbrella policies exclude coverage for sexual abuse by the Order, its employees, or its volunteers.  See Conklin Decl. Ex. B, at 34; id. Ex. C, at 35.  The Order does not argue that the exclusion is inapplicable here.  As a result, the Order is not entitled to coverage under the umbrella policies.

## CONCLUSION

Accordingly, based on the above, **IT IS HEREBY ORDERED** that

1. The motion for joinder [ECF No. 27] is denied;

2. The motion for summary judgment [ECF No. 31] is granted;

3. St. Paul Mercury Insurance Company has no duty to defend or indemnify The Order of St. Benedict, Inc. with regard to the action styled Doe 27 v. The Order of St. Benedict a/k/a and d/b/a St. John's Abbey, et al., Case No. 19HA-CV-4599, pending in Minnesota District Court, County of Dakota, First Judicial District; and

4.   St. Paul Mercury Insurance Company has no duty to defend or indemnify The Order of St. Benedict, Inc. with regard to the action styled <u>Doe 188 v. The Order of St. Benedict a/k/a and d/b/a St. John's Abbey, and Father Timothy Backous</u>, pending in Minnesota District Court, County of Stearns, Seventh Judicial District.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: February 28, 2017

<u>s/David S. Doty</u><br>
David S. Doty, Judge<br>
United States District Court